**A.B. ALLEN, Plaintiff,**

**v.**

**The LINCOLN COUNTY ELECTION COMMISSION, et al.,**
**Defendants.**

**Civ. No. PB–C–90–601.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

April 23, 1992.

John W. Walker, Mark Burnette, John Walker Law Firm, Little Rock, Ark., for plaintiff.

Michael R. Rainwater, Skokos, Coleman & Rainwater, Little Rock, Ark., Allen P. Roberts, Roberts, Harrell & Lindsey, P.A., Camden, Ark., Murray F. Armstrong, Armstrong & Binns, Star City, Ark., Janet L. Pulliam, Pulliam Law Offices, P.A., Little Rock, Ark., for defendants.

## ORDER

GEORGE HOWARD, Jr., District Judge.

A.B. Allen, a black resident of Gould, Arkansas, brings this action alleging that defendants violating the Voting Rights Act, 42 U.S.C. § 1971 *et seq.* and plaintiff's right to vote, by allowing white non-residents to vote in the Gould city election. Allen, a candidate for mayor, lost the election by four votes to the white candidate.[1]

The parties ultimately agreed to settle the matter, and to conduct a new mayoral election after necessary corrections had been made to voter registration records for the City of Gould.[2] On February 21, 1992, the Court issued an Order approving a settlement agreement between the Gould City Council and Mayor and the plaintiffs to conduct a special Mayoral election on April 14, 1992. The person elected at the special election was to serve until midnight, December 31, 1994.

The election was held, and Allen received the most votes of the three candidates. He received 293 votes, David Rochelle received 262 votes, and candidate Bradshaw received 60 votes.

Because no candidate obtained a majority, the Lincoln County Election Commission has declared a run-off election for April 28,

---

1. Due to the vote in the primary election held September 25, 1990, the Lincoln County Election Commission declared that a runoff between plaintiff and the white candidate, David Rochelle, was required. The record does not indicate who obtained a plurality of the votes in the primary election.

2. The settlement was between the City of Gould, David Rochelle, the members of the city council and plaintiffs. The Lincoln County Election Commission was dismissed under a separate settlement agreement whereby it would purge the voter registration list of ineligible voters. In addition, the Commission was directed to conduct the election pursuant to the terms of the settlement agreement.

1992. Plaintiffs have filed a motion to enforce the settlement agreement, and ask that the Court enjoin the Lincoln County Election Commission from conducting a run-off election on April 28, 1992.

The defendants point to A.C.A. § 7–5–106 which provides for runoff elections for any county or municipal office where no candidate receives a majority of the votes cast. The City and City Council further argue that the Lincoln County Election Commission informed Allen at a meeting in March of 1992, that there would be a run-off election if none of the three received a majority.

The Court first notes that the language of the order itself approving the terms of the agreed upon special election precludes a runoff. The election is to be held, and the person so elected will serve as mayor. No mention is made of whether the person is to be elected by majority or plurality. The Court is of the opinion that the parties knowingly entered in a settlement agreement after extensive, arm's length negotiations. The settlement represented the parties' plan to remedy irregularities settlement represented the parties' plan to remedy irregularities of voter eligibility in the previous election. Had they wanted to provide for a run-off election where no candidate obtained a majority, they could have so provided in the agreement.

Second, the language of the runoff statute, A.C.A. § 7–5–106, does not appear to be applicable to this situation. The statute refers specifically to "general elections," not "special elections," as the one here is. Certainly if the Arkansas Legislature intended for the runoff provisions to apply to all elections, general and special, it could have so stated instead of using limiting language.[3]

Third, the Court is persuaded that a run-off election would be antithetical to the relief obtained through the settlement. The history of the run-off statute at issue here is discussed in *Jeffers v. Clinton*, 740 F.Supp. 585 (E.D.Ark.1990). Chief Circuit Judge Richard Arnold, writing for a three judge panel, noted that time and time again the Arkansas Legislature enacted run-off statutes to reduce black political opportunity. Judge Arnold stated:

> We cannot ignore the pattern formed by these enactments [of run-off statutes]. Devotion to majority rule for local offices lay dormant as long as the plurality system produced white officeholders. But whenever black candidates used this system successfully—and victory by a plurality has been virtually their only chance at success in at-large elections in majority-white cities—the response was swift and certain. Laws were passed in an attempt to close off this avenue of black political victory. This series of laws represents a systematic and deliberate attempt to reduce black political opportunity. Such an attempt is plainly unconstitutional. It replaces a system in which blacks could and did succeed, with one in which they almost certainly cannot. The inference of racial motivation is inescapable.

740 F.Supp. at 594–595.

The *Jeffers* court did not enjoin the enforcement of the run-off statutes. However, the court called into question the validity of such statutes, particularly as applied to municipal elections in areas of the State with a substantial minority population, as in Gould. 740 F.Supp. at 595 fn. 7.

**3.** A.C.A. § 7–5–106 (1991 Supp.) provides:
(a) Whenever there are more than two (2) candidates for election to any county elected office ... or for any municipal office at any general election held in this sate, and no candidate for the municipal ... office receives a majority of votes cast for the office, there shall be a runoff general election held in that county or municipality two (2) weeks following the date of the general election at which the names of the two (2) candidates receiving the highest number of votes, but not a majori-

ty shall be placed on the ballot to be voted upon by the qualified electors ... The person receiving the majority of the votes cast for the office at the runoff general election shall be declared elected.

(c) The provisions of this section are intended to be in addition to and supplemental to the laws of this state pertaining to the election of county and municipal officers at *general elections*. (emphasis added)

The Court is persuaded that the concern expressed in *Jeffers* of the constitutionality of the run-off statute lends support to plaintiff's position that a run-off not be had in this instance. Allen brought this action to redress certain Voting Rights Act violations. He had lost by only four votes in a general run-off election, an election marred with some voter irregularity. Without admitting liability, defendants agreed that corrections needed to be made to the voter registration records and that a new election was required. To require Allen to go through another run-off election, after a clear plurality victory, would place an unnecessary obstacle to black political opportunity.

The Court finds that the settlement agreement should be enforced, that Allen should be declared the victor of the special mayoral election to serve until midnight, December 31, 1994 and that defendants be enjoined from holding a run-off election.

Accordingly, the motion to enforce settlement is granted; the motion to shorten time for responding is moot.

IT IS SO ORDERED.