The Honorable Don R. House State Representative P.O. Box 605 Walnut Ridge, Arkansas 72476-0505
Dear Representative House:
I am writing in response to your request for an opinion on the filling of a vacancy in the mayor's office in Hoxie, Arkansas. Specifically, you state the following question:
 The City of Hoxie, Arkansas has a "special" mayoral election slated for August 15, 2000. There are four candidates seeking the office all of which are male and white. If none of the candidates in the above election receives a majority will it be necessary to hold a "run-off election" between the two candidates receiving the highest number of votes? This question has been brought to my attention due to the April 23, 1992 ruling in Allen v. Lincoln County Election Commission by Honorable George Howard, Jr. Federal District Judge.
RESPONSE
In my opinion at least two separate state statutes require a run-off, if necessary, for this election. Although the constitutionality of these statutes has been called into question, the federal courts have not enjoined their operation. In my opinion, therefore, a run-off is required unless suit is brought to prevent their application.
Some explanation is necessary. As an initial matter, the pertinent portions of the two statutes should be set out. The first is A.C.A. §14-43-304, a provision applying to cities of the first class with the mayor/council form of government, such as Hoxie. It was enacted in 1975 and governs the general election of mayors in such cities and also details the procedure for filling a vacancy in that office as follows:
 (c)(1) In the event that no candidate for mayor of cities of the first class receives a majority of the votes cast in the general election, the two (2) candidates receiving the highest number of votes shall be certified to a special runoff election, which shall be held two (2) weeks from the day on which the general election is held.[1]
 (2) The special runoff election shall be conducted in the same manner as provided by law, and the election results thereof shall be canvassed and certified in the manner provided by law.
 (d) In the event a vacancy occurs in the office of mayor of these cities, the vacancy shall be filled by a special election and special runoff election, if necessary, as provided in subsection (c) of this section. [Emphasis added.]
The second statute, originally adopted in one form in 1989, and then later repealed and replaced in another form in 1991, is A.C.A. §14-42-206. It is a general statute governing the holding of municipal elections in cities with the mayor/council form of government. It provides in pertinent part as follows:
 (c)(1)(A) If no candidate receives a majority of the votes cast in the general election, the two (2) candidates receiving the highest number of votes cast for the office to be filled shall be the nominees for the respective offices, to be voted upon in a runoff election pursuant to 7-5-106.
* * *
 (d) Special elections for mayors in cities of the first class and other special elections of officials required by law in cities and towns shall use the procedure in this section. [Emphasis added.]
The last quoted provision, in my opinion, requires a runoff election in a special election for mayor, because a runoff is part of the "procedure" set out in section 14-42-206. That statute (A.C.A. § 14-42-206) also bootstraps its provisions to a third statute, A.C.A. § 7-5-106, which, by its terms, requires runoff elections for county and municipal general, as opposed to special, elections.
In my opinion, therefore, at least two Arkansas statutes, with the help of a third, require a runoff election in the special mayoral race you describe.
It appears that these statues are still operative despite federal case law calling into question their constitutionality. In the federal case you reference, Allen v. Lincoln County Election Commission,789 F. Supp. 976 (E.D. Ark. 1992), the court refused to impose a runoff requirement in a mayoral election in a city of the second class (Gould, Arkansas). At the general election for mayor in that city, election irregularities occurred which led to litigation. As a part of the settlement of the litigation, an order was entered calling another "special" election to determine the true outcome. A dispute arose as to whether a runoff election was required after this "special" election. Judge Howard, in the Allen decision, held that no runoff was required, because the settlement order in fact precluded such a runoff and A.C.A. § 7-5-106 was inapplicable because, as noted above, it did not apply to "special" elections.[2] The Allen case turned upon the provisions of a settlement order and the inapplicability of A.C.A. § 7-5-106. It did not involve a discussion of the two statutes pertinent to your question, A.C.A. §14-43-304 and 14-42-206. It is therefore not controlling on your question.
The more relevant case is a case cited within the Allen decision, Jeffersv. Clinton, 740 F. Supp. 585 (E.D. Ark. 1990). The Jeffers court called into question the constitutionality of A.C.A. 7-5-106 and the former version of A.C.A. § 14-42-206,[3] finding that they were a part of a "series of laws represent[ing] a systematic and deliberate attempt to reduce black political opportunity." 740 F. Supp. 595. The Jeffers court stated that "[s]uch an attempt is plainly unconstitutional." Id.[4]
As noted in the Allen decision, however, "[t]he Jeffers Court did not enjoin the enforcement of the run-off statutes." 789 F. Supp. 977. The remedy imposed in Jeffers was "pre-clearance" of any new provisions requiring runoffs in general elections. 740 F. Supp. 601.[5] The runoff statutes in question, therefore, are still operative. Although in my opinion, their application might be enjoined in a proper case, this would be a matter for a court of competent jurisdiction.
It is therefore my opinion that a runoff election, if necessary, will be required in the special mayoral election you describe.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] Other later statutes set the time for such runoff elections at three weeks following the general election. See Acts 1997, No. 451, codified at A.C.A. § 7-5-106(a)(1)(A).
[2] A.C.A. § 14-43-304 was inapplicable because Gould was a city of the second class, and not first class, and the former version of A.C.A. §14-42-206, which was the applicable law at the time, was not at issue.
[3] Under the former version of this statute, enacted asAct 905 of 1989, a "municipal primary" was held six weeks prior to the municipal general election. If no candidate received a majority at the "municipal primary" the two candidates receiving the highest number of votes were placed on the ballot at the municipal general election. The current version of A.C.A. § 14-42-206 also requires a runoff election, if necessary, but it is to be held after the general municipal election, consonant with A.C.A. § 7-5-106.
[4] The court also discussed Act 269 of 1975, which is codified as A.C.A. § 14-43-304, set out above, but erroneously concluded that it was no longer "on the books." An act passed subsequent to Act 269 of 1975,Act 175 of 1977, restricted the application of this statute to cities of the first class with populations not less than 57,000 nor more than 61,000 according to the 1970 federal decennial census. This special language was declared unconstitutional in Ferguson v. Brick,279 Ark. 288, 652 S.W.2d 1 (1983), but that court imposed no remedy, concluding that the plaintiff who sought application of the runoff statute in a different city had waited too late to bring the action. The special restrictive language, however, was later "omitted" from the law as special or local when the Code Revision Commission compiled the Arkansas Code Annotated in 1987. Because Act 175 of 1977
had added a separate new provision restricting the existing statute, and did not rewrite the runoff requirement at length, the effect of omitting the special portion was to leave the pre-existing statute (Act 269 of 1975) in tact. It was therefore "on the books" at the time of the Jeffers decision in 1990. It is still "on the books" in the form of A.C.A. § 14-43-304.
[5] "`Pre-clearance' means either a finding by this Court that the qualification, etc., does not have the purpose and will not have the effect of denying the right to vote on account of race or color, or in contravention of the Voting Rights Act, or a failure by the Attorney General of the United States to object to the qualification, etc., within 60 days." 740 F. Supp. 599-600. A question might arise as to whether "pre-clearance" of the current version of A.C.A. § 14-42-206, which was adopted after the Jeffers decision, was required. This statute, however, appears to merely tie the runoff requirement to A.C.A. § 7-5-106, a statute on the books at the time of the Jeffers decision.